FILED

2005 Nov-14  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NEVA URICK,** | ] |
| **PLAINTIFF,** | ] |
| | ] |
| **v.** | ]**Case No.** |
| | ]**CV-03-VEH-0948S** |
| | ] |
| **DIXIE BULK BAG CO., INC.,** | ] |
| **DEFENDANT.** | ] |

## <u>Opinion</u>

This Court has before it the May 28, 2004, motion of Defendant Dixie Bulk Bag Co. Inc.'s ("Dixie Bulk Bag") for summary judgment as to Plaintiff Neva Urick's claims. (Doc. 38.)  For the reasons set forth below, the Defendant's motion is due to be denied in part and granted in part.

### I.  Procedural History

Plaintiff Neva Urick commenced this action on April 24, 2003, by filing a complaint in this Court alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq</u>., the Civil Rights Act of 1991.  Plaintiff Urick alleges in her complaint that she was subjected to unwelcome acts of sexual harassment by her immediate supervisor at Dixie Bulk Bag, Paul Horsley ("Horsley"),  in a manner sufficiently severe to create an objectively hostile work

1

environment.   Plaintiff Urick contends that when she rejected Horsley's discriminatory conduct, she was retaliated against by him which caused her to be constructively discharged.  Further, Plaintiff Urick contends that Defendant Dixie Bulk Bag deliberately, wantonly, and/or negligently failed to train, supervise, and/or terminate Horsley which resulted in Horsley's subjecting Plaintiff Urick to sexual harassment, retaliation, and eventually a constructive discharge.

On May 28, 2004, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff Urick has failed to establish prima facie cases of sexual harassment, constructive discharge, and retaliation; (2) that even if Plaintiff can establish a prima facie case of sexual harassment, the Defendant is entitled to summary judgment as to Plaintiff's Title VII claim of sexual harassment on the grounds that it has invoked an affirmative defense; and (3) that Plaintiff Urick's state law claim must fail because it is dependent on whether she can establish her Title VII sexual harassment claim, which is meritless.

The Defendant has submitted evidence[1]  in support of its motion for summary

---

[1] The Defendant submitted the following evidence: deposition of Neva Urick; excerpts of the deposition of Paul Horsley; excerpts of the deposition of Jerry Limbaugh Sr.; excerpts of the deposition of Paula Webb; excerpts of the deposition of Hilary Cates; excerpts of the deposition of Shairlon Knight; excerpts of the deposition of Dawn McCrory; Urick's January 20, 1999, and January 27, 1999, time cards; statements from witnesses in response to Urick's charge of discrimination; Dixie Bulk Bag's sexual harassment policy acknowledgements from January 14, 1999; docket report for Tamara Jackson v. Dixie Bulk Bag Co., Inc.; CV-98-AR-2667-S; declaration of Jerry Limbaugh Sr.; declaration of Karen Willis; declaration of Hilary Cates;

judgment and filed a supporting brief on May 28, 2004. On July 17, 2004, the Plaintiff filed a brief and evidence[2] in opposition to the Defendant's motion for summary judgment.  The Defendant filed a brief and evidence on July 27, 2004, in reply to Plaintiff's response in opposition.

## II.  Standard of Review

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229

---

declaration of Paula Webb; declaration of Dawn McCrory; docket report for Horsley v. Urick, CV 2002 1981; declaration of Tina Harris; Horsley's application for employment; memorandum dated February 17, 1997, regarding Horsley's promotion; Dixie Bulk Bag's sexual harassment policy; and payroll records for Urick for 2000 and 2001 calendar years.  References to the deposition transcripts are denoted by the last name of the deponent, followed by the abbreviation "Dep.," followed by the page number of the deposition transcripts being referenced.

[2] The Plaintiff submitted the following evidence: deposition of Neva Urick; deposition of Hilary Cates; deposition of Jerry Limbaugh, Sr. dated May 3, 2004; deposition of Shairlon Knight; affidavit of Tina Harris; Dr. Rosenzweig's final expert report; deposition of Dawn McCrory; deposition of Horsley; declaration of Harris; calendar; deposition of Jerry Limbaugh, Sr. dated July 23, 1999; Dr. Rosenzweig's prelimary expert report; family court protection from abuse order; EEOC determination; excerpts of deposition of Paula Webb; affidavit of Karen Willis; Dixie Bulk Bag's EEOC response; copy of complaint filed; copy of Urick's EEOC charge, memorandum opinion of Judge Acker in Jackson v. Dixie Bulk Bag, et. al; Tamara Jackson's EEOC charge; and affidavit of Tamara Jackson.

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp.</u>, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  <u>Id.</u> at 324.

The substantive law will identify which facts are material and which are irrelevant.  <u>Chapman</u>, 229 F.3d at 1023; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  <u>Chapman</u>, 229 F.3d at 1023; <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248; <u>Chapman</u>, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue

at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of

Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears

the burden of proof at trial, then it can only meet its initial burden on summary

judgment by coming forward with positive evidence demonstrating the absence of

a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict

if not controverted at trial.  Fitzpatrick, 2 F.3d at 1115.  Once the moving party

makes such a showing, the burden shifts to the non-moving party to produce

significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its

initial burden on summary judgment in either of two ways.  First, the moving party

may produce affirmative evidence negating a material fact, thus demonstrating that

the non-moving party will be unable to prove its case at trial.  Once the moving party

satisfies its burden using this method, the non-moving party must respond with

positive evidence sufficient to resist a motion for directed verdict at trial.  The

second method by which the moving party who does not bear the burden of proof

at trial can satisfy its initial burden on summary judgment is to affirmatively show

the absence of evidence in the record to support a judgment for the non-moving

party on the issue in question.  This method requires more than a simple statement

that the non-moving party cannot meet its burden at trial but does not require

evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III.  Relevant Facts[3]

Dixie Bulk Bag Company, Inc. ("Dixie Bulk Bag") is owned by Jerry Limbaugh, Sr. ("Limbaugh")  and located in Leeds, Alabama.  (Limbaugh 8, Urick Dep. Ex. 3.)  Dixie Bulk Bag is in the business of manufacturing bags for industrial use which are sold to Bag Supply Company ("Bag Supply") in Birmingham, Alabama.  (Limbaugh 8-9, 11, 41-42.)  Limbaugh's wife owns Bag Supply and as

---

[3] Facts are undisputed unless otherwise expressly noted.  If the facts are in dispute, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the facts are presented in the light most favorable to the Plaintiff.  <u>See</u> <u>Fitzpatrick</u>, 20 F.3d at 1115.

an employee of  Bag Supply she is responsible for sales.  (Limbaugh 8, 9, 42.)
Limbaugh maintains his office at Bag Supply in Birmingham but each morning he
visits the plant in Leeds to oversee the operation.  (Limbaugh 42-43; Horsley 10;
Knight 80.)  On a daily basis, Limbaugh meets with Horsley concerning production,
personnel matters, inventory, and other business issues.  (Horsley Dep. 10-11;
Limbaugh Dep. 43-44.)

Urick began working for Dixie Bulk Bag in June of 1998 as a sewing machine
operator, but she was often assigned to other labor-type jobs within the plant as
needed.  (Urick Dep. 27.)  There were two breaks in her employment with the
company–the first from March to September of 2000 when she asked for leave to be
at home with her children[4] and the second from October 2000 to February of 2001
when she was on medical leave while recuperating from a broken foot.  (Urick Dep.
27-28; 116.)   Throughout Urick's employment at Dixie Bulk Bag, she was
considered to be a very good employee.  (Px. 3, Limbaugh Dep. 64.)

When Urick initially commenced employment with Dixie Bulk Bag, Jay
Limbaugh was the plant manager and her direct supervisor.   Jay Limbaugh
terminated his employment with Dixie Bulk Bag in 1998.  (Limbaugh 15-16.)

---

[4] Urick's children had been removed from her custody after her former husband abused
the children and Urick The children were returned to her in 2000.

7

Horsley became the plant manager upon Jay Limbaugh's departure.  Horsley has been employed at Dixie Bulk Bag since 1992.  He worked as a material mover until he was promoted to plant production supervisor in 1997 and then plant manager in 1998.  (Evid. Ex. 20, Horsley 34, 56, 125; Evid. Ex. 21.)

Shortly after Horsley became the plant manager, Urick began to encounter problems with him.  (Urick Dep. 49, 87.)  Horsely began to make derogatory remarks to Urick  such as calling her a "dumb ass" and telling her to "stop being a pussy." (Urick Dep. 213.)  He also began to make sexual overtures to her.  Some examples of these overtures included Horsley's comments to Urick that having sex with him would be like being with two men, that he was "hotter than a dog with two dicks," that he would show her his, if she showed him hers, and on another occasion he repeatedly asked Urick to show him her breasts.  (Urick Dep. 50, 111-112.)  On one  occasion when Urick was returning from a break outside, Horsley stated, "It's really nipply out there" referring to the effect of the cold weather on women's breasts.[5] (Urick Dep. 63.)  Horsley also allegedly engaged in offensive sexual conduct directed at Plaintiff Urick, such as shining a flashlight back and forth from her breasts to her crotch while laughing along with a male employee and on another occasion placing a hammer near his crotch to simulate having an erection as he told

---

[5] Horsley denies making the comment "It's nipply out there."  (Horsley Dep. 68, 151.)

Plaintiff Urick he was "glad to see her.[6]"  (Urick Dep. 65,67.)

Horsley's sexual comments and overtures allegedly evolved to frequent threats of physical abuse.  Specifically, whenever Horsley walked passed Plaintiff Urick, he made statements that he wanted to "slap the shit" or "knock the fuck" out of her.  (Urick Dep.56-57, 124-125.)  As often as two to three times a day, he slapped or punched at her, as though he was going to hit her.  Id.  Several times Horsley came so close with his hand that Plaintiff Urick could feel the wind off of his hands.  (Urick Dep. 57.)  Horsley would also walk up behind Plaintiff Urick and slap the table to startle her.[7]  (Urick Dep. 88.)  Plaintiff Urick expressed to Horsley that she did not want him to hit at her or come up behind her and slap the table in order to  startle her.  (Urick Dep. 87-88.)  Plaintiff Urick allegedly feared that Horsley  would actually hit her, because  he came close to hitting her on numerous occasions and his manner toward her became more threatening over time.  On one occasion, Horsley grabbed Plaintiff Urick from behind by her hair, and threatened

---

[6] Horsley denies the conduct of using a hammer to simulate having an erection.  (Horsley Dep. 107, 151-52.  )

[7] Defendant alleges that Horsley acknowledges that several times a week during Plaintiff Urick's employment he engaged in a joking slap on a table that startled employees, male and female alike.  (Horsley Dep. 153-55.)

to cut her hair off with a pair of scissors.[8]  Dawn McCrory observed Plaintiff Urick leaving the bathroom when Horsley ran and got McCrory's scissors off her desk and began acting like he was going to cut Plaintiff Urick's hair.  (Urick Dep. 89.) McCrory further observed Horsley lift Plaintiff Urick's hair back and act like he was going to cut it.  (McCrory Dep. 90.)

Plaintiff Urick's fear that Horsley would physically hurt her was compounded by a series of events.  During Tamara Jackson's[9] sexual harassment litigation, Horsley assembled all of the employees one morning and said that if anyone tried to get in the way of his job or family, he would kill them.  (Urick Dep. 82.)  He also angrily accused Plaintiff Urick of wearing a "wire" and taping his conversations and reporting them to Tamara Jackson. (Urick Dep. 79-80.)

Plaintiff Urick attempted  to report Horsley's behavior to Jerry Limbaugh, however McCrory[10] prevented her from successfully reporting her concerns.  On one

---

[8] After that incident, on three or four other occasions  Horsley came up beside Plaintiff Urick with scissors making snipping noises around her hair or head to simulate cutting her hair. (Urick Depo. p. 103-104.)

[9] Tamara Jackson is a former employee who filed a sexual harassment claim against Dixie Bulk Bag because Horsley allegedly sexually harassed her.

[10] McCrory is a former supervisor at Dixie Bulk Bag and is looked upon as the number two person in charge with the number one person being Horsley. (Knight Depo. p. 70; Cates Depo. p. 84.)  McCrory handles administrative tasks for Horsley including answering the phones and reporting the attendance of employees.  (Urick Depo. p. 124.)  She is the most senior employee at Dixie Bulk Bag and is knowledgeable about the operations of the company. Therefore, she is always willing to help the employees with work related matters or personal

occasion, McCrory informed Plaintiff Urick that she could not interrupt Jerry Limbaugh when he was having a meeting with Horsley.  Plaintiff Urick informed McCrory that she really needed to speak with Limbaugh regarding an important matter. (Urick Dep.  95-96.)  Although McCrory informed Plaintiff Urick that she would relay the message to Limbaugh, McCrory informed Plaintiff Urick later that day that she never got the opportunity to convey Plaintiff Urick's message to him. (Urick Dep.  96.)  Plaintiff Urick tried to meet with Limbaugh after her first attempt and expressed her desire to do so with McCrory, however, she was not successful. (Urick Dep. 210.)

On March 19, 2001, when Plaintiff Urick went to the bathroom at approximately 12:13 p.m., Horsley  took a swing at her with a balled fist and said, "get your dumb ass back to work before I knock the shit out of you."  (Urick Dep. 69-70.) Initially, Plaintiff Urick went back to work and, as she thought about what had transpired, she decided she needed to get away from the workplace.  (Urick Dep. 70.)  She was very upset and could not perform her work.  (Urick Dep. 73.) Therefore, Plaintiff Urick left the plant, walking in the rain.  When Plaintiff Urick left the plant walking, Horsley came after her in his vehicle. (Urick depo. 72.)  When Horsley stopped and opened the passenger door and told her to get in so he could

_____

concnerns. (Limbaugh Depo. p. 125.)

take her home, Plaintiff Urick felt scared and trapped, as she was in an isolated area

without much traffic. (Px. 12, Rosenzweig Preliminary Expert Report at 13.)

Plaintiff Urick decided to get in Horsley's truck in order to get him to leave her

alone, as she thought that Horsley would not leave her alone if she did not get in his

truck. (Px. 12,Rosenzweig Preliminary Expert Report at 13.)  Horsley gave Plaintiff

Urick a ride home and pleaded with her to come back to work that day to finish a

work order. ( Px. 1, Urick Dep. 72.)  Plaintiff Urick did not return to Dixie Bulk Bag

and she did not have another job at the time.[11] ( Urick Dep. 214.)

---

[11] The Defendant asserts that Plaintiff Urick quit Dixie Bulk Bag on March 19, 2005, because a few of her female co-workers played a practical joke on her.  The day before Plaintiff Urick walked off the job, she discovered that a clear rubber band had been placed in her soft drink. (Urick 73-75; Horsley 141-42.)  Plaintiff Urick did not consider this a joke because the rubber band was clear, could not be detected in the drink, and could have choked her.  (Urick 74, 76.)  Plaintiff Urick discovered it when it came into her mouth. (Urick 75.)  Plaintiff Urick did not know who had put the rubber band in her drink (Urick 77), but she did not trust anyone at Dixie Bulk Bag, male or female.  (Urick 77.)  Plaintiff Urick told Horsley about the incident.  Horsley moved Plaintiff Urick away from the two women suspected of engaging in the practical joke.  (Horsley 143-44.) Horsley counseled both Connie Nabors and Stacey Cobb that interfering with an employee's food or drink was not a joke and should not happen again.  (Horsley 143-45.)  Horsley also instructed Nabors and Cobb to apologize to Plaintiff Urick.  (Horsley 145.)  Horsley asserts that the next day, Plaintiff Urick quit her job and he pleaded with her not to quit.  (Urick 72-3; Horsley 146-47.)  When Limbaugh discovered that Plaintiff Urick had left her employment on that occasion, he had the understanding based on what he learned from female employees that Plaintiff Urick quit because of the practical joke played on her at the warehouse. (Limbaugh 51-53.)  Limbaugh investigated it and determined that Connie Nabors was responsible.  (Limbaugh 53.)  Limbaugh believed that the joke was inappropriate, but he did not need to take any action because Nabors quit shortly thereafter.  (Limbaugh 53-54.)

**Sexual Harassment Policy**

Plaintiff Urick received and signed for a copy of Dixie Bulk Bag's handbook on June 26, 1998. (Urick 12; Urick Dep. Ex. 2.) Plaintiff Urick was aware from the time she began her employment that the handbook prohibited profanity, abusive language, and sexual harassment. (Urick Dep. Ex. 2, pp. 3-4; Urick 15-16.) According to the handbook, "depending on management's judgment of the seriousness of the offense," an employee could receive a verbal reprimand, a write-up, or termination for policy violations. (Urick Dep. Ex. 2, p.3.)

Shortly after she began work at Dixie Bulk Bag, Plaintiff Urick signed a separate document detailing the sexual harassment policy. (Urick 17; Urick Dep. Ex. 3.) The policy states that "Dixie Bulk Bag Company, Inc. intends to maintain a work environment that is free of threatening, intimidating, or harassing conduct, including sexual harassment." (Urick Dep. Ex. 3.) Plaintiff Urick along with other employees signed the sexual harassment policy again in January 1999. (Urick Dep. 22; Urick Dep. Ex. 4; Evid. Ex. 11; Evid. Ex. 13, ¶ 4, ex. B; Evid. Ex. 22.) Jerry Limbaugh testified that he, his son, Jay Limbaugh, or Horsley read and explained the policy one-on-one with each employee. (Limbaugh 26-27, 30-32; Evid. Ex. 13, ¶ 4, ex. B.; Cates 35; Horsley 50, 57-58; Knight 13, 60-61; Webb 26-27.) Horsley has had no training covering sexual harassment. (Horsley Dep. 60. )

Plaintiff Urick acknowledged that the policy required that hostile or offensive conduct be reported to Limbaugh. (Urick 17-18.) Plaintiff Urick further understood that "no reprisals or retaliation will be allowed to occur as a result of the good faith reporting of charges of sexual harassment." (Urick Dep. 19.) Althoug Limbaugh wanted to be accessible to his employees and informed about any sexual harassment complaints, the sexual harassment policy and the company's handbook do not state how to get in touch with Limbaugh to report harassment. (Horsley Dep. 6; Limbaugh Dep. 41.) However, the sexual harassment policy was posted by the time clock where employees were required to clock in and out each day. (Urick Dep. 21; Webb Dep. 108.) The posting included Limbaugh's telephone number and address in Birmingham. (Evid. Ex. 19; Horsley 51, 181; Cates 40-41, 83-84, 102; Knight 15, 62-63, 132-33; Webb 80.) There is no regular schedule that the company has established for discussing the sexual harassment policy. (Limbaugh Dep. 35.) The company does not periodically redistribute or otherwise remind employees of the sexual harassment policy after their initial hire. (Horsley Dep. 57.)

EEOC Charges

Plaintiff Urick filed a charge of discrimination with the EEOC against Dixie Bulk Bag on August 21, 2001. (Urick. Dep. Ex. 10) On or about March 28, 2002, Horsley filed suit against Plaintiff Urick in the Circuit Court of Jefferson County,

Alabama alleging defamation.

## IV.  Applicable Substantive Law and Analysis

### A.  Sexual Harassment

Plaintiff alleges that she was subjected to unwelcome acts of sexual harassment by her immediate supervisor, Horsley, an employee of the Defendant.[12] The alleged sexual harassment of Plaintiff Urick  by Horsley included, but was not limited to, the following: Horsley making sexual overtures to Plaintiff Urick including comments to Plaintiff Urick that having sex with him would be like being with two men, that he was "hotter than a dog with two dicks," and that he would show her his, if she showed him hers.   Plaintiff also asserts that Horsley subjected her to frequent threats of physical abuse including slapping and punching at her, as though he was going to hit her.  (Urick Dep. 56-57, 124-125.)

To establish a hostile environment sexual harassment claim under Title VII, Plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms, conditions, or

_____

[12] It appears that Plaintiff is asserting only a hostile environment sexual harassment claim and is not asserting a claim for quid pro quo sexual harassment.

privileges of her employment; and (5) there is a basis for holding the employer liable. See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 582 (11th Cir. 2000); Walton v. Johnson & Johnson Services, Inc., 347 F.3d 1272, 1280 (11th Cir. 2003); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Defendant does not dispute that Plaintiff Urick has established elements (1) and (2) of her prima facie case.  Plaintiff Urick is a member of the protected class under Title VII: she is a female.  With regard to the second element of the prima facie case, if the facts are construed in the light most favorable to Plaintiff Urick, she has provided evidence that she was subjected to unwelcome sexual harassment because of Horsley's comments and behavior.  However, the Defendant asserts that Plaintiff Urick has failed to establish a prima facie case of sexual harassment because the conduct alleged was not based on sex and the harassment was not sufficiently severe or pervasive to alter the terms, conditions, or privileges of her employment.   Further, the Defendant asserts that even if Plaintiff Urick can demonstrate that the harassment was severe or pervasive, Dixie Bulk Bag  has asserted a Faragher/Ellerth affirmative defense.

      1.    Based on Sex

The Defendant asserts that the alleged conduct was not based on sex.  The Court finds that Plaintiff Urick has presented sufficient evidence of acts by Horsley

that are of a sexual nature resulting in harassment based on Plaintiff Urick's sex. Plaintiff Urick has provided evidence that Horsley made sexual overtures to Plaintiff Urick, including but not limited to, Horsley's comments to Plaintiff Urick that having sex with him would be like being with two men, that he was "hotter than a dog with two dicks," that he would show her his, if she showed him hers, and on another occasion repeatedly asking Plaintiff Urick to show him her breasts.  (Urick Dep. 50, 111-112.)  Further Horsley has stated to Plaintiff Urick when she was returning from a break outside, that "It's really nipply out there" referring to the effect of the cold weather on women's breasts. (Urick Dep. 63.)  Horsley also allegedly engaged in offensive sexual conduct directed at Plaintiff Urick, such as shining a flashlight back and forth from her breasts to her crotch while laughing along with a male employee and on another occasion placing a hammer near his crotch to simulate having an erection as he told Plaintiff Urick that he was "glad to see her." (Urick Dep. 65,67.)

In addition, the Plaintiff has presented evidence that Horsley frequently threatened to physically abuse her.  Specifically, whenever he walked passed Plaintiff Urick, he made statements that he wanted to "slap the shit" or "knock the fuck" out of her.  (Urick Dep.56-57, 124-125.)  As often as two to three times a day, he allegedly slapped or punched at her, as though he was going to hit her.  Id.

17

Several times Horsley came so close with his hand that Plaintiff Urick could feel the wind off of his hands.  (Urick Dep. 57.)  Horsley would also walk up behind Plaintiff Urick and slap the table to startle her.  (Urick Dep. 88.)  On one occasion, Horsley grabbed Plaintiff Urick from behind by her hair and threatened to cut her hair off with a pair of scissors.[13]  Although Horsley's threats of physical abuse do not consist of sexual advances or sexual overtones, the Eleventh Circuit has held that "to be actionable under Title VII, the conduct giving rise to a hostile or offensive work environment need not consist of sexual advances or have clear sexual overtones."  Sims v. Montgomery County Commission, 766 F.Supp. 1052, 1073 (M.D. Ala. 1990)(quoting Bell v. Crakin Good Bakers, Inc., 777 F.2d 1497, 1503 (11th Cir. 1985)).  Therefore, "conduct of a nonsexual nature which, for example, ridicules women or treats them as inferior, can constitute prohibited sexual harassment."  Id.

Further, in order for a Title VII plaintiff to establish this element, he must show that "but for the fact of [his] sex, [he] would not have been the object of harassment."  Henson v. City of Dundee, 682 F.2d at 904.  In other words, in a typical case where a male supervisor harasses a female worker, if the worker shows

---

[13] After that incident, on three or four other occasions  Horsley came up beside Plaintiff Urick with scissors making snipping noises around her hair or head to simulate cutting her hair. (Urick Depo. p. 103-104.)

18

that the male supervisor did not treat her male co-workers in a similar manner, she has established that the harassment was based on her sex.  Id.  However, in cases in which the alleged harasser treats workers of both sexes similarly, or the conduct is equally offensive to both sexes, a plaintiff cannot show that the harassment was based upon sex because men and women were afforded equal treatment.  Id. Although the Defendant asserts that he would walk up behind both men and women employees and slap the table to startle them, Plaintiff has demonstrated that Horsley did not punch or slap at men employees, threaten to cut their hair, or make statements to the men employees that he wanted to "slap the shit" or "knock the fuck" out of them.  Accordingly, Plaintiff Urick has satisfied the third element that the harassment was based on her sex.

> 2.   Severe or Pervasive

The Defendant also disputes the existence of the fourth element of the prima facie case: that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  After careful consideration of the record, the Court concludes that the comments and conduct alleged by Plaintiff Urick raise a genuine issue of material fact as to whether Horsley's conduct was sufficiently severe or pervasive to alter her working conditions.  In order "to be actionable under [Title VII], a sexually

objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca Raton</u>, 118 S.Ct. 2275, 2283 (1998). In determining whether an environment is sufficiently hostile or abusive, courts should consider all circumstances, including: 1) the frequency of the conduct; 2) its severity; 3) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferes with an employee's work performance. <u>Id</u>. at 2283. The Court should look at the totality of the circumstances to decide whether a hostile environment was created. <u>Mendoza</u>, 195 F.3d at 1246.

First, the Court must consider the frequency of the conduct. Plaintiff has presented evidence that, two or three times a day, Horsley would either slap at or hit at Plaintiff Urick.. (Urick Dep. 56-57.) Everyday or every other day, Horsley would make comments to Plaintiff Urick that he wanted to "slap the shit out of [her]" or "slap the fuck out of [her]." (Urick Dep. 124-25, 222.) Although only on one occasion Horsley grabbed Plaintiff Urick's hair and threatened to cut it, on three or four other occasions he walked up beside Plaintiff Urick and threatened to cut her hair while making snipping noises with scissors. (Urick Dep. 103-104.) Horsley would often say "It's nipply out there" whenever it was cold to refer to the effect of cold weather on women's breasts. Horsley asked Plaintiff Urick to expose herself to him by requesting that she show him her breasts and on another occasion he stated

to Plaintiff Urick that "I'll show you mine, if you will show me yours." (Urick Dep. 50.)   The Plaintiff also presented evidence that Horsley subjected her to single incidents of sexual comments and conduct such as using a hammer to simulate that he was having an erection while stating to Plaintiff Urick that he was "glad to see [her]."   At the summary judgment stage, the Plaintiff has presented sufficient evidence to demonstrate that the alleged harassment was frequent.

Second, the Court must review the severity of the conduct.   The Plaintiff has also presented evidence that the alleged harassment was severe.   Two or three times a day, Horsley would either slap at or hit at Plaintiff Urick.   (Urick Dep. 56-57.) Everyday or every other day, Horsley would make comments to Plaintiff Urick that he wanted to "slap the shit out of [her]" or "slap the fuck out of [her]."   Urick Dep. 124-25, 222.)   The Plaintiff presented evidence that Horsley made multiple comments to her and engaged in behavior directed at her that was sexual in nature or ridiculed her based on her sex.   For instance, Horsley pulled Plaintiff Urick's hair on one occasion and threatened to cut it off.   On three or four other occasions he walked up beside Plaintiff Urick and threatened to cut her hair while making snipping noises with scissors.   Further, Horsley requested on more than one occasion that the Plaintiff show him her breasts.   Based on the evidence, Plaintiff Urick has alleged conduct severe enough to proceed to a jury.

Third, the Court must determine whether the conduct was physically

threatening or humiliating.  Upon review of the record, the Court finds that Plaintiff has presented evidence that Horsley's conduct was physically threatening or humiliating.  Plaintiff Urick testified that she feared that Horsley would strike her because he often came so close to hitting her that she could feel the wind off of his hands. (Urick Dep. 57.)  In addition, Horsley would walk up behind Plaintiff Urick and slap the table to startle her. (Urick Dep. 88.)  Plaintiff Urick expressed to Horsley that she did not want him to hit at her or come up behind her and slap the table and startle her. (Urick Dep. 87-88.)  Plaintiff Urick testified that she was also humiliated when he attempted to cut her hair.  She asserts that she often cried and could not sleep as a result of Horsley's conduct and comments.  Plaintiff Urick's fear that Horsley would physically hurt her was compounded by a series of other events.  During Tamara Jackson's sexual harassment litigation, Horsley assembled all of the employees one morning and said that if anyone tried to get in the way of his job or family, he would kill them. (Urick Dep. 82.)  He also angrily accused Plaintiff Urick of wearing a "wire" and taping his conversations and reporting them to Tamara Jackson. (Urick Dep. 79-80.)  Plaintiff Urick has presented evidence to demonstrate that Horsley's conduct was physically threatening or humiliating.

Lastly, the Court must determine whether the harassment unreasonably interfered with Plaintiff Urick's work performance.  The Plaintiff asserts that Horsley's conduct and behavior mentally interfered with her ability to perform her

job.  Plaintiff testified that Horsley's alleged harassment became so severe that she hated to go to work.  (Urick Dep. 56.)  In fact, the stress from her job interfered with her ability to sleep at night.  As a result, she slept an average of two to three hours a night.  (Urick Dep. 185.)  Plaintiff Urick testified that on March 19, 2001, when she was leaving the bathroom, Horsley swung his fist at her while stating "get your dumb ass back to work before I knock the shit out of you."  (Urick Dep. 69-70.) Although Plaintiff Urick initially went back to work, she was very upset and could not perform her work.  (Urick Dep. 73.)  Therefore, Plaintiff Urick left the plant, walking in the rain, and did not return to work at Dixie Bulk Bag after that day.  The evidence before the Court viewed in the light most favorable to the plaintiff reflects that Horsley's alleged harassment altered the working conditions as to make it more difficult for Plaintiff Urick to perform her job.   See also Moye v, Fleming Co., 924 F.Supp. 1119, n. 1 (M.D. Ala. 1996)(quoting Harris v. Forklift Systems Inc., 510 U.S. 17, 114 S.Ct. 367 (1993)("It suffices to prove that a reasonable person subjected to the discriminatory conduct would find ... that the harassment so altered working conditions as to 'ma[k]e it more difficult to do the job'")(Ginsburg, J., concurring)(quoting Davis v. Monsanto Chemical Co., 858 F.2d 345, 349 (6th Cir. 1998)).  In considering the totality of the circumstances, the Court finds that Plaintiff Urick has raised a genuine issue of fact as to whether Horsley's alleged harassment was sufficiently severe  to unreasonably interfere with her work performance.

The Plaintiff has demonstrated that there is a basis for holding the employer liable. Horsley, a Dixie Bulk Bag employee, was working in his capacity as Plaintiff Urick's supervisor during the period of the alleged sexual harassment. An employer is subject to vicarious liability under Title VII to a victimized employee for actionable discrimination caused by a supervisor. Faragher v. City of Boca Raton, 524 U.S. 775(1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). However, an employer may invoke an affirmative defense to avoid liability. The Defendant asserts that there is no basis for holding Dixie Bulk Bag liable for Horsley's alleged conduct because it has satisfied the affirmative defense. The Faragher/Ellerth affirmative defense allows an employer to avoid liability for a supervisor's sexual harassment of an employee by proving that: 1) it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior; and 2) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. See Faragher, 524 U.S. at 807; Walton, 347 F.3d at 1286; Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1296-1297 (11th Cir. 2000).

In determining whether an employer can establish the affirmative defense, the Court must first determine "whether the employer has exercised reasonable care in preventing sexually harassing behavior." Walton, 347 F.3d at 1286; Coates, 164 F.3d at 1369. The Court in Faragher "implied that employers could meet the initial

burden in determining whether they had exercised reasonable care to prevent sexual harassment by promulgating a sexual harassment policy." Madray, 208 F.3d at 1297-98. In fact, dissemination of an employer's anti-harassment policy clearly satisfies the requirement for exercising reasonable care in preventing sexual harassment. Id. The Defendant  asserts that it prohibits sexual harassment in the workplace and has provided employees with a policy and complaint mechanism to report any perceived harassing behavior**.**  Further, the Defendant asserts that this policy was routinely disseminated to all new employees upon hire and it was posted near the employees time clock.

Plaintiff admits that she received Dixie Bulk Bag's sexual harassment policy. Although Dixie Bulk Bag has demonstrated that it has a sexual harassment policy in place, the Eleventh Circuit has made it clear in Frederick v. Sprint/United Management Co., that "an employer's showing that it has a sexual harassment policy does not automatically satisfy its burden" on the first element. 246 F.3d 1305, 1313-14 (11th Cir.2001).  The employer must also show "that its sexual harassment policy was effectively published, that it contained reasonable complaint procedures, and that it contained no other fatal defect." Id.  Although the Defendant provided evidence that it had a sexual harassment policy,  Plaintiff Horsley presented evidence that the Defendant's sexual harassment policy was not effectively published and did not contain reasonable complaint procedures.  The Defendant has

presented evidence that the sexual harassment policy was posted by the time clock where employees were required to clock in and out each day. (Urick 21; Webb 108.) The posting included Jerry Limbaugh's telephone number and address in Birmingham in order to file complaints. (Evid. Ex. 19; Horsley 51, 181; Cates 40-41, 83-84, 102; Knight 15, 62-63, 132-33; Webb 80.)    The Defendant has not presented any evidence that the sexual harassment policy was posted within other areas of the plant besides near the time clock such as the break room and general work area of the plant.   Further, the Plaintiff has presented evidence that the company does not have an established schedule for discussing the sexual harassment policy with employees. (Limbaugh Dep. 35.) The record reflects that the company does not periodically redistribute or otherwise remind employees of the sexual harassment policy after their initial hire. (Horsley Dep. 57.) Even though Limbaugh wanted to be accessible to his employees and informed about any sexual harassment complaints, the sexual harassment policy does not provide alternative methods for reporting complaints.  Employees are encouraged to report complaints to Horsley, the alleged harasser, or to Limbaugh by telephone or personally when he visits the plant daily.  However, the Plaintiff has presented evidence that neither Limbaugh nor Horsley received any training in sexual harassment before and after Plaintiff Urick's tenure with Dixie Bulk Bag Inc.  (Limbaugh  Dep. 102; Horsley Dep. 60.) The Court finds that Plaintiff Urick has raised a genuine issue of material fact as to

whether the Defendant exercised reasonable care in preventing sexually harassming behavior.

Under the second prong of the affirmative defense, Dixie Bulk Bag  must show that Plaintiff unreasonably failed to avail herself of the corrective or preventive opportunities provided by Dixie Bulk Bag or to avoid harm otherwise. Faragher, 524 U.S. at 807; Burlington v. Ellerth, 524 U.S. 742, 763, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). The Supreme Court expressly stated that "unreasonable failure to use any complaint procedure provided by the employer...will normally suffice to satisfy the employer's burden under the second element of the defense." Burlington, 118 S.Ct. at 2270. (emphasis added).  The Defendant alleges it has satisfied the elements of the affirmative defense because the Plaintiff did not utilize the complaint procedure.

It is undisputed that Plaintiff Urick did not officially file a complaint with Dixie Bulk Bag.  However, Plaintiff Urick has presented evidence that she attempted to file a report with Jerry Limbaugh but McCrory prevented her from successfully reporting her concerns.  On one occasion, McCrory informed Plaintiff Urick that she could not interrupt Jerry Limbaugh when he was having a meeting with Horsley. Plaintiff Urick informed McCrory that she really needed to speak with Limbaugh regarding an important matter. (Urick Dep.  95-96.)  Although McCrory informed Plaintiff Urick that she would relay the message to Limbaugh, McCrory informed

Plaintiff Urick later that day that she never got the opportunity to convey Plaintiff

Urick's message to him. (Urick Dep. 96. Plaintiff Urick attempted to file additional

complaints to Limbaugh but was unsuccessful.  A failure to use the complaint

procedure must be "unreasonable" in order for the employer to meet its burden.

Faragher, 524 U.S. at 807-08.  The Eleventh Circuit has established that "in some

cases, the proof will show that the employee's non-compliance was reasonable under

the circumstances and, in these cases, the defendant cannot satisfy the second

element of the affirmative defense." Frederick, 246 F.3d at 1314.[14]  Upon review of

the record in the light most favorable to the non-movant party, the Plaintiff has

presented evidence that she attempted to file a complaint with Limbaugh in person

but she was prevented from doing so by McCrory.  Further, Plaintiff testified that

Horsley stated to the employees during the Tamara Jackson litigation that anybody

who tried to interfere with him and his home life, would be killed by him.  (Urick

Dep. 82.) The Court finds that there is a genuine issue of material fact as to whether

the Plaintiff's failure to report the alleged harassment resulted in her reasonably

failing to avail herself of the corrective or preventive opportunities provided by

---

[14] In Frederick, the Court held summary judgment was inappropriate on the issue of whether the plaintiff's delay in reporting the harassment was reasonable, where the plaintiff testified she never received some of the defendant's sexual harassment policies, the procedure for reporting harassment was unclear in the policy she did receive, and a manager to whom she tried to complain about the harassment told her not to pursue her complaint.  246 F.3d at 1315-16. Similarly, other courts in this Circuit have denied summary judgment on this issue where the plaintiff was unaware of the employer's sexual harassment policy.  See Early v. Morris Newspaper Corp., 54 F.Supp. 2d 1261, 1270 (M.D. Ala 1999).

Dixie Bulk Bag.  Accordingly, the Court finds that the Defendant's motion for summary judgment should be denied as to Plaintiff's hostile environment sexual harassment claim.

## B.  <u>Constructive Discharge</u>

The Plaintiff asserts that she suffered a constructive discharge as a result of the sexually hostile environment she was subjected to while working at Dixie Bulk Bag.  A constructive discharge in violation of Title VII occurs when an employee is compelled to resign because the employer is deliberately subjecting [her] to exceedingly intolerable and illegal working conditions which are a direct result of the employee's race, color, religion, sex, or national origin.  <u>Jones v. Winn-Dixie Stores, Inc.</u>, 75 F.Supp.2d 1357 (S.D. Fla. 1999).  To prove a case of constructive discharge, an employee must demonstrate that [her] working environment was so intolerable that a reasonable person in [her] position would be compelled to resign. <u>Kilgore v. Thompson & Brock Mgmt., Inc.</u>, 93 F.3d 752, 754 (11th Cir. 1996).  The Eleventh Circuit has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of "intolerable."  <u>Wardell v. School Bd. of Palm Beach County, Florida</u>, 786 F.2d 1554,1558 (11th Cir. 1986).  In establishing intolerable working conditions, the plaintiff must demonstrate the severity or pervasiveness of the harassment.  The standard for proving constructive discharge is higher than the standard for proving a hostile work environment claim.

Hipp v. Liberty Nat'l. Life Ins. Co., 252 F.3d 1208 (11th Cir. 2001).

The Plaintiff asserts that the environment at Dixie Bulk Bag was brutal, resulting in her being constructively discharged, because: (1) Horsley called her a "dumb ass"; (2) he made sexual overtures to her including comments that he was "hotter than a dog with two dicks" and having sex with him would be like being with two men; (3) he requested that Plaintiff Urick show him her breasts; (4) he engaged in sexual conduct by simulating having an erection with a hammer while telling Plaintiff Urick that he was "glad to see her;" (5) he frequently made threats of physical abuse by slapping at or punching at Plaintiff Urick as though he was going to hit her; (6) he told Plaintiff Urick daily that he wanted to "slap the shit" or "knock the fuck" out of her; (7) on one occassion he grabbed Plaintiff Urick's hair and threatened to cut it off with a pair of scissors; (8) on three or four other occasions Horsley walked up beside  Plaintiff Urick and threatened to cut her hair with scissors; (9) he angrily accused Plaintiff Urick of wearing a "wire" and taping his conversations; and (10) he threatened, during the Tamara Jackson litigation, that if anyone tried to get in the way of his job or family, he would kill them.  As a result of the alleged harassment, Plaintiff Urick contends that she hated to go to work, could not sleep, and often cried at work and home.  Plaintiff Urick asserts that she finally quit on March 19, 2001, when Horsley took a swing at her while she was exiting the bathroom.  She asserts that he told her with a balled fist to "get your

dumb ass back to work before I knock the shit out of you." (Urick Dep. 69-70.) The Court finds that Plaintiff Urick has raised a material question of fact as to whether her working conditions were so intolerable that she was compelled to resign from her position with Dixie Bulk Bag.

## C. Retaliation Claim

Plaintiff Urick asserts that she was subjected to retaliation when (1) she rejected Horsley's alleged sexual harassment and (2)  Horsley filed a defamation lawsuit against her after she filed EEOC charges regarding his alleged sexual harassment of her**.**  The Defendant asserts that: (1) Plaintiff Urick did not engage in statutorily protected activity while at Dixie Bulk Bag and (2) even if Plaintiff Urick engaged in statutorily protected activity, she did not sustain an adverse employment action.

Generally, to establish a prima facie case of retaliation, a plaintiff must show: (1) that [she] engaged in protected activity; (2) that [her] employer was aware of that activity; (3) that  [she] suffered an adverse employment action; and (4) that there was a causal link between [her] protected activity and the adverse employment action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997)).  The causal link requirement is to be construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff merely has to prove that the protected activity and the negative

employment action are not completely unrelated." <u>Id</u>. at 1460, quoting <u>EEOC v.</u>
<u>Reichhold Chem., Inc.</u>, 988 F.2d 1564, 1571-72 (11th Cir. 1993).  The allocation of
the evidentiary burdens will be determined by whether the evidence for establishing
the retaliation claim is characterized as "direct" or "circumstantial" evidence.

Although Plaintiff Urick has not presented evidence that she engaged in
statutorily protected activity within the meaning of Title VII while employed at
Dixie Bulk Bag, it is undisputed that Plaintiff Urick engaged in statutorily protected
activity when she filed her charges of discrimination with the EEOC after leaving
the company.[15] There is also sufficient evidence that Dixie Bulk Bag was aware of
Plaintiff Urick filing an EEOC charge after her departure.  In fact, Horsley's
defamation action was filed against Plaintiff Urick shortly after she filed her charge
and is based on allegations raised in her EEOC filing.  Plaintiff Urick has satisfied
prongs (1) and (2)  of her prima facie case of retaliation  As it relates to the third
prong, the Court finds that Plaintiff Urick has not established that  she suffered an
adverse employment action.

---

[15] Plaintiff Urick asserts in her complaint that she engaged in statutorily protected activity
by rejecting Horsley's alleged discriminatory conduct such as his sexual overtures.  "Opposition
to an unlawful employment practice usually involves an employee's complaining to a supervisor
about alleged harassment or discrimination." <u>See</u>  <u>Clark County Sch. Dist., v. Breeden</u>, 532 U.S.
268 (2001); <u>Pipkins v. City of Temple Terrace Fla.</u>, 267 F.3d 1197 (11th Cir. 2001) ("statutorily
protected expression includes internal complaints of sexual harassment to superiors as well as
complaints lodged with the EEOC ...").  Plaintiff has not presented any evidence that she
engaged in statutorily protected activity such as filing a complaint regarding Horsley's conduct
with Limbaugh or the EEOC while employed at Dixie Bulk Bag.

In <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232 (11th Cir. 2001), the Eleventh Circuit established a standard for determining whether an employment action is adverse. The Court held that to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. 245 F.3d at 1239. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. <u>Id</u>. "An adverse employment action is an ultimate employment decision, such as a discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" <u>Gupta v. Florida Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000)(quoting <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (3rd Cir. 1997)).

Plaintiff Urick was not working at Dixie Bulk Bag when she filed her EEOC charges. Therefore, she was not subjected to a change in her compensation, terms, conditions, or privileges of employment when she filed her EEOC charges. Instead, Plaintiff Urick was subjected to defending a defamation lawsuit filed by Horsley. The filing of a lawsuit is not an adverse employment action, such as required to trigger [Title VII's] protection against retaliation, because it is not an employment

action at all.   See EEOC v. R.J. Gallagher Co., 181 F.3d 645, 657 (5th Cir. 1999)(affirming summary judgment for employer on retaliation claim which was based on the employer's filing of a lawsuit against the employee and reasoning that "the filing of a lawsuit cannot be an 'adverse employment action'. . . because it is not an employment action at all").   The Court finds that Plaintiff Urick has not established a prima facie case of retaliation.   Accordingly, the Defendant's motion for summary judgment as to Plaintiff Urick's retaliation claim should be granted.

### D. Negligent and/or Wanton and Malicious Training, Supervision, and Retention[16]

Plaintiff Urick asserts that the Defendant wantonly and/or negligently failed to terminate, monitor, and/or train its employees on anti-harassment policies.   As a result of the Defendant's negligent and/or wanton failure to train, supervise, and terminate Horsley, Plaintiff asserts that she was subjected to sexual harassment and retaliation.   The Court finds that Plaintiff Urick's claim for Defendant's alleged negligent and/or wanton training, supervision, and retention is barred by the applicable statute of limitations.   The statutory period of limitations for Plaintiff Urick's state law claim of negligent and/or wanton training, supervision, and retention is two years.   ALA. CODE 1975, § 6-2-38(l) ("actions for injury to the

---

[16] Plaintiff Urick's complaint does not clearly characterize her claims.   Plaintiff Urick did not object to the characterization of her claims as presented in the Defendant's motion for summary judgment.   Therefore, the Court is reviewing Plaintiff Urick's negligent and/or wanton supervision, retention, and training claim as her only state law claim.

person or rights of another") and (n) ("actions commenced to recover damages for injury to the person wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee under the doctrine of respondeat superior must be brought within two years"); Mardis v. Robbins Tire & Rubber Co., 669 So.2d 885(Ala. 1995).

In the present case, Plaintiff Urick alleges facts that arise out of her sexual harassment, retaliation, and constructive discharge claims that occurred before April 24, 2001.  Plaintiff asserts that, while she was employed at Dixie Bulk Bag, Inc., Horsley made sexual overtures and offensive comments to her, including but not limited to, Horsley's comments to Plaintiff Urick that having sex with him would be like being with two men, that he was "hotter than a dog with two dicks," that he would show her his, if she showed him hers, and on another occasion repeatedly asking Plaintiff Urick to show him her breasts.  As often as two to three times a day, Plaintiff alleges Horsley slapped at or punched at her, as though he was going to hit her.  Plaintiff Urick contends that Horsley's allegedly harassing and offensive conduct occurred daily until March 19, 2001, when she was constructively discharged.  Plaintiff Urick filed  an EEOC charge[17] on August 21, 2001, and filed

---

[17] It is established that the statute of limitations for a plaintiff's state law claims is not tolled while the plaintiff is pursuing administrative remedies with the EEOC.  Johnson v. Railway Express Agency Inc., 421 U.S. 454, 466, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (limitations period for §1981 claim not tolled during the time the EEOC conducted an administrative hearing on the Title VII claim as the two claims are distinct and separate); Gonzalez v. Firestone Tire Rubber Co., 610 F.2d 241 (5th Cir. 1980) (filing of a charge with the

a complaint in the United States District Court for the Northern District of Alabama

on April 24, 2003.  The Court finds that all acts that could be construed as acts of

sexual harassment and retaliation that occurred before April 24, 2001, are time-

barred.  ALA. CODE 1975, § 6-2-38(l).  Therefore, the only act that transpired after

April 24, 2001, was Horsley's filing of a defamation suit against Plaintiff Urick after

she was no longer employed by Dixie Bulk Bag.[18]

To the extent that Plaintiff Urick asserts that Dixie Bulk Bag was negligent

and/or wanton in the training, supervision, and retention of Horsley resulting in him

filing a defamation suit against Plaintiff Urick, the Court finds as noted above that

the filing of a lawsuit is not an adverse employment action resulting in retaliation.

Further, Plaintiff Urick can't prove that Dixie Bulk Bag ratified Horsley's filing of

a defamation lawsuit against her.  An "employer is directly liable if it authorizes or

participates in the employee's acts or ratifies the employee's conduct after it learns

of the action."  Potts v. BE & K Constr. Co., 604 So.2d 398, 400 (Ala. 1992).  In

order to show that the Defendant ratified Horsley's conduct, Plaintiff Urick must

---

EEOC does not toll statute of limitations applicable to a § 1981 claim based on same
discriminatory events); Gardner v. St. Bonaventure Univ., 171 F.Supp.2d 118, 131 (W.D.N.Y.
2001) (refusing to toll the statute of limitations for state law claims during pendency of EEOC
proceeding); Stordeur v. Computer Associates Int'l, Inc., 995 F.Supp. 94, 99 (E.D.N.Y. 1998)
(refusing to toll the statute of limitations for state law claims during pendency of EEOC
proceeding); Evans v. Mobile Infirmary Medical Center, No. 04-0364, 2005 WL 1840235, at 6
(S.D. Ala. Aug. 2, 2005).

[18] Horsley filed a defamation suit against Plaintiff Urick on March 28, 2002, in the Circuit
Court for Jefferson County, Alabama.

show that the Defendant expressly adopted Horsley's decision to file a defamation lawsuit or that the Defendant implicitly approved of it.  The Court finds that Plaintiff Urick has not presented sufficient evidence to prove that the Defendant ratified Horsley's decision to file a defamation lawsuit against her.   Accordingly, the Defendant's motion for summary judgment as to Plaintiff Urick's negligent and/or wanton training, supervision, and retention claim is due to be granted.

## V. Conclusion

For the reasons set forth above, the Court denies in part and grants in part the Defendant's motion for summary judgment as to Plaintiff's harassment, constructive discharge, retaliation, and state law claim.

**DONE** and **ORDERED** this 14th day of November, 2005.

VIRGINIA EMERSON HOPKINS
United States District Judge